Case 16-1434 Stone Surgical LLC v. Stryker Corporation et al. and 16-1654 Stryker Corporation v. Christopher Ridgeway. Mr. LaCour, you may proceed for the appellant. Argument not to exceed 15 minutes per side. Thank you. Good morning, Your Honors. Louis LaCour here today on behalf of the appellant Christopher Ridgeway. I'd like to reserve three minutes of my time for rebuttal. It's a pleasure to be before the court today. Your Honors, the judgment of the district court in this case suffers from multiple defects, we believe, the most prominent of which are the use of an incorrect body of state law, the lack of a legal basis for the assertion of jurisdiction, and the foreclosure of evidence from the jury that was critical to Mr. Ridgeway's defense on the merits of Stryker's claims against him. Let me tackle first the question of choice of law. I think it's perhaps the most involved, so I'd like to discuss that first. First off, it hardly need be said that the use of a correct, in a diversity case, the use of the proper body of state law, there is virtually no other function or issue that could be more fundamental and critical. In this particular instance, selection of the proper state law reaches to the validity of the non-compete agreement, which of course is a central issue in the case, the choice of law to be used, as well as a forum selection clause that was contained in the agreement that Stryker claims Mr. Ridgeway signed. It's the law of Michigan that where there's a choice of law question, one needs to make resort to the restatement, second of the conflicts of law to resolve the question. In that respect, section 187.2B of the restatement speaks to the very scenario that we have before the court today. Starting point ordinarily would be that if there is a contractual choice, the parties ought to use that contractual choice, but there's an important exception to that provision. It says that if enforcing that contractual choice would be offensive to the fundamental principles of another state, here in this instance Louisiana, and that other state, again Louisiana, has a materially greater interest in the dispute than does Michigan, then the contractual choice should be set aside and disregarded. It goes on to say that, almost unnecessarily I think, but that absent the choice of law contract provision, Louisiana law would be the proper choice in this particular instance. A question about that. Does the materially significant analysis, does the fact, does the party's contract factor into Louisiana's interest versus Michigan's interest in any way? I want to make sure I understand Your Honor's question. Does the fact of the contract? The fact that they agreed upon Michigan, does that factor in to determining which state has a more significant interest? Not in terms of materially greater interest, and that's why the 187 2B says from the outset that ordinarily we're going to respect the choice of the parties in their contract, but in this particular instance we do have in the state of Louisiana a principle, a fundamental principle that, fundamental principles, fundamental policy I should say, that relates specifically to these kinds of agreements. Title 23 section 921, which we cite in our brief, speaks to this very clearly. And the starting point in Louisiana, as opposed to Michigan, the starting point in Louisiana is a non-compete agreement is invalid. It's null and void. There has long been a hostility toward non-compete agreements in that state, dating back to at least 1934, which is when the statute was originally enacted and has been amended over the years. And in that statute it says quite clearly that if an employer attempts in an employment agreement to force upon that employee a choice of law provision or a forum selection clause or even a non-competition obligation, that's going to be considered null and void unless you can bring yourself within an exception to the statute. Now, without getting too far down into the weeds, the exception doesn't apply here, certainly with respect to forum selection and choice of law. On the non-compete part of it, that portion of the agreement would be rendered null and void for two reasons. First, the statute requires that the employer adequately specify what its business is for purposes of- A non-compete is okay sometimes. In very narrow circumstances. It's not completely banned. That somewhat lessens the fundamental nature of the policy, doesn't it? Only a small degree, and I say that, Your Honor. A small degree lessens it. It does. And I'm wondering how there's a materially greater interest. I think he just asked the question I was trying to ask. Okay. I think the answer to that question, Your Honor, is to understand the history of that statute. And it's not just about being hostile to an agreement's provisions along these lines. In the SWAT 24 case, the Louisiana Supreme Court took some pains to talk about what animates that particular statute. And there are two things at work. One is the Louisiana legislature's desire to protect its citizens from overreaching in an employment agreement. Just because a state has a statute that says we favor something or we disfavor something, that alone can't possibly be resulting in their having a materially greater interest. So, in other words, you're about to say that Louisiana said we don't like non-competes and we really mean it. Okay, we get that. I don't think there's any question about that. That doesn't make it material. That does not mean Louisiana has a materially greater interest. Or no national corporation could ever have a uniform non-compete across the country that would bind people to their law when they were doing business in a state like Louisiana that said we don't like them and we mean it. Well, as I said to Judge Rogers, no, the statute does not completely prohibit it from happening. But there has to be something more than the fact that they have a statute that unless exceptions apply make it against public interest. Well, here's the public interest part, and I was just about to say to Judge Rogers, there are two things that are animating this particular statute. The first is, as I said, to protect its own citizens. What I'm asking you to address is not what Louisiana says. We get that. There has to be something more than Louisiana's policy to give them not only a significant interest, which they have, but a materially greater interest than Michigan. So it doesn't really matter what Louisiana says, I don't think, in connection with assessing whether their interest is materially greater. I understand what you're saying, Judge. The answer, I think, to that question is that the test is, is there a fundamental policy of the state that's at issue? And, of course, we say that there is. But there's more here. There's a fundamental policy of Michigan that's at issue, too. They do not disfavor non-competes.  I don't believe my opponent has cited any case that says Michigan's position on non-competes is fundamental to a principle under Michigan law. And let's not forget. So back to where I was before. Because Louisiana said, we don't like non-competes, and we really mean it, i.e., it's fundamental. And Michigan said, non-competes are okay, but they didn't say, and we really mean it, so it's fundamental. Therefore, definitionally, Louisiana has a materially greater interest. That would mean Louisiana always trumped the law of any other state, no matter what one says in a non-compete. I don't think that's necessarily true, because I can imagine a situation where there may be another state that has expressed in very clear terms that allowing broad-ranging non-competes is an essential policy of that state. And let me get to the other point I wanted to make about Louisiana's policy in this respect. It's not just about let's protect a citizen who signs an agreement that really is going to be contrary to his interests. As the Court discussed in SWOT 24, this is about preserving Louisiana citizens' ability to earn a living, which is important, okay. But it goes beyond that, because as the Court identified in SWOT 24, it also said that's important to the state of Louisiana as a matter of public policy, because people who cannot earn a living are a burden on the public. And so the state of Louisiana is saying, not only is it a good thing for you, employee, that we protect you in this way, it's good for the entire state of Louisiana. There is nothing... But again, we are in a multi-state union here, where you're trying to assess the interests of two different states. And looking at this transaction, there seems to be no question that both states have an interest. You happen to think that Louisiana's is greater, and it trumps because Louisiana said it's a fundamental policy of that state. The end result from that argument is exactly contrary to Comment E to 187.2. It would simply mean that if a state says something is fundamental, that will always trump the otherwise justifiable expectations of the parties. And I can find no authority that says... I can find the authority that says what Louisiana thinks about the issue. I get that. I agree with you on that. But I can't find any authority that says that because Louisiana says it's fundamental to Louisiana, that means that trumps the expectations of Michigan or any other state. Where do I look to to find that authority outside of Louisiana law? I don't think it would trump in every instance. Where do I find the authority for your position outside of Louisiana law? OK, since we're talking about the restatement, let me also direct the court's attention to Comment G under 187, which specifically speaks to a policy of a state that is designed as a protection against superior bargaining power. That is exactly the kind of policy that the restatement anticipates would be a fundamental policy of a state that ought to be respected in the choice of law analysis. But more directly to your point, Your Honor, in this particular instance, not only do we have a state statute that dates back well over almost a century, but every court in Louisiana to address this issue has repeatedly emphasized and underscored the fundamental nature. I'm trying to make the point and give you a chance to respond to the problem I'm having with your analysis, that what Louisiana says and how seriously they mean it can't trump the outcome of this case. It simply can't under the restatement. So simply give me some authority anywhere that says that because a state says it's really important to us, that trumps another state that might not say it's as important in a case as Louisiana did. Where do I find that? The only answer I can give you, Your Honor, is under your test. It would be virtually inconceivable for any state to have a fundamental policy. The only way to determine what that state's policy is is to look at its case law and its statutory law. I'm not even coming close to saying that. I want you to assume that it is a fundamental policy of Louisiana. As you're saying, I want you to assume it's existed for a century. I want you to assume they really mean it. All the things that you've said I'm not questioning. What I am questioning is how under the restatement does that alone mean that Louisiana wins, particularly in light of E that says we are to honor the party's intentions where possible, when they've entered into it freely and voluntarily. The answer I would give you, Your Honor, is that is not the only thing that should be considered. The other thing that ought to be considered, and this 188 gets into this in more detail, but the connection of the parties to the state. Your red light is on. So I just want you to understand what happens when there is a dialogue like this. I've asked you three times what authority, what case I should look at, and every time you've diverted over into something else. So I just want you to understand that when you sit down, I, as only one judge on the panel, am going to assume that you have no authority but you won't admit it. That's what we're sort of bound to do. So you can think about that. And if you've got some authority when you come back, please tell me. Before I sit down, I want to clarify, the question is, I know I'm using up my time. I think you're going to get it. I'm about to ask your adversary a question that will reiterate for you what the questioning has been during your time. And I think if you'll just listen carefully, you'll get it. All right. Thank you, Your Honors. Good morning. May it please the Court. My name is Michael Wexler. I represent the appellee in this matter. The appeal taken by the appellant in this matter should be denied. It should be denied because this case was properly handled by the district court and the decision of the jury should stand. I don't want to interrupt you at the beginning, but I'm going to. This is an important question. The questioning during your adversary's argument dealt with whether two things could be considered as a part of the materially greater interest analysis. The first one, which Judge Rogers and I both talked about, was whether the party's choice of law figured into that or not. And the second question, coming from Judge McKee, was whether the state's own statement could be factored into that or not. And what's your position on those two things? The panel has seized on an important point, which shows the flaw in the appellant's argument. Number one, under 187.1, which is where the starting point is for this analysis, if the parties could and did contract for a choice of law, that should be followed. Well, assume for one reason or another we don't go with 187.1. Let's assume we're in two, okay? So then if we look at . . . That's where the district court was. Yes. And then if we look at two, the problem is that the appellant conflated the test. It's not simply using the magic words fundamental policy. That's one element. Is there a fundamental policy? And then two, the second point is, is there material greater interest? So to Judge Gibbons and Judge Rogers, I say that the choice of law does matter and what was agreed to by the parties does matter. And to Judge McKee, I say that there is no authority that says fundamental policy trumps because, as Judge McKee correctly points out and as the comment points out, the conflict of law analysis would mean nothing if there was simply a case in any jurisdiction that said this is a fundamental policy, so Louisiana would trump every other state in the union. If that were the situation, then a national company could never have an agreement that would be enforceable in Louisiana. That's not exactly what Mr. LaCroix is saying. He's saying it would trump unless some other state said, and this is a fundamental policy, the other direction. But he's saying absent that, it would always trump. At least that's what I understand its position to be. So did you find any cases that stand for that proposition? No, Your Honor. There aren't cases that say simply because you say fundamental policy, those magic words mean that you don't follow the contractually agreed upon choice of law. Would you consider that at all? I'm sorry. I don't understand your question. Would you consider that at all in the materially greater interest analysis, even though it's not the deciding or determinative factor, or is it inappropriate to consider it? It is simply one element to look at a fundamental policy. So the answer to both of those things is, yes, you can take them into account. Of course, because the test is you should look at fundamental policy as an element, but then you also have to look at material greater interest in this analysis. What exactly determines whether there's a materially greater interest? It can't, as I understand it, be that there's a provision which chooses because that's the assumption for the whole 187, right? And it can't be whether there's a fundamental policy because this is something which qualifies. It says contrary to a fundamental policy of a state, not a policy, but a state which has a materially greater interest. So what do we look to to determine whether it's materially greater interest? So you look at numerous factors. You just look at a lot of factors. You do look at a number of factors. For example, where was the contract entered into? Where was the harm felt? I'm not sure all these sort of 188 factors. Yes, Your Honor. You just look and see are they not just strong but materially stronger, all those factors. Is that the idea? I think you look if they are strong, each one separately, and then together you make a decision if it's materially stronger. The point is that a national company, and you look at the court's decisions in Lowry and Marzullo, you look at those decisions and you decide does a national company have an expectation that their agreement should be interpreted under a choice of law that they've contracted for and uniformly with an employee who signs the agreement? 187, that's what they're dealing with, right, is those kinds of contractual agreements. Yes, and that's why. Whether there's such a contractual agreement doesn't tell us very much. Well, 187.1, which is actually where the court. I'm down in 187.2, right? Yes, but I just simply note that 187.1, as this Court noted in the Daimler-Chrysler case, that's where your analysis starts. And you say under 187.1, if the parties could have contracted for and did contract for that choice of law, that's where your analysis stops, and I believe the decision says no exceptions. Then what's the problem with the appellant's argument here is that they look at 187.2 and they skip that first point, of course, because that first point is not in their favor because the parties did contract for the choice of law being Michigan. So then when you look at 187.2, you then have to look at all of these factors as to why there's a material greater interest in Michigan versus Louisiana. The district court did that and said there are factors that go both ways, so that means even if it's greater, it's not materially greater. Correct, and that was the correct decision. We just sort of make a pile of factors and see whether it's material, unless there's some court case that controls. Yes, and in this situation, when you look at the various factors, you can't. A lot of them relate to Louisiana. Some relate to Louisiana. The whole compliance is in Louisiana, right? Whether you comply with the non-compete, it all takes place. You either comply with it in Louisiana or you don't comply with it in Louisiana. There's no issue of whether you comply with it in some other state. Is that true or not? That's not exactly true because in this situation, some compliance was in Louisiana, whether or not, for example, Mr. Ridgway went to customers he wasn't supposed to go to. But in the facts of this case, for example, Mr. Ridgway sent fraudulent bills to Michigan for double billing purposes and to increase his commissions and to increase his bonuses. So his compliance, for example, with his agreement— Was that in violation of the non-compete to send a bill? Aspects of it were because he was using confidential information. But let me give you a better example. He removed from the servers that are located in Michigan trade secrets. He removed pricing information, margin information. He then took that information, put it into charts, and he then prepared proposals to customers in which he compared the striker pricing— Is this in the complaints? I'm sorry, Your Honor?  This was at trial. There were actually exhibits that showed where he made a proposal where he stole information on Michigan servers. So he didn't comply with his agreement by going to Michigan to get that information. He then took that information. Then in Louisiana, he prepared proposals that he showed our information against information from a competitor that he was now working for. So in that instance, compliance is in both states. So as I said earlier, there's some compliance issues in Louisiana, some compliance issues in Michigan. So the way this comes to us is based on the trial courts charged to the jury that Michigan law control in charging the jury about the non-compete in accord with Michigan law, right? So at the time, the district court made the decision about what jury instruction to give. It had heard all the evidence of this type that would bear on the comparison of the interest between the states. So it was able to make a legal determination that was in part based on the evidence that had been presented at trial. That's correct. Okay. And I also note that Mr. Ridgway, the appellant, actually waived that issue because there was no objection made to the instructions given to the jury by the court. They had submitted a set of instructions. The striker had submitted a set of instructions. The judge then came up with a set of instructions, and then there was a conference. I thought that the judge had already ruled in advance of the trial that Michigan law was going to apply. He did not. He actually said in his opinion when he initially made a prima facie ruling early on in the case that Michigan law would apply, he said it was a prima facie ruling, and then we would deal with it later. And when he got to that point in the trial when he actually had to give instructions to the jury, the appellant never objected to the instructions that the court gave. So, in fact, there's no subject matter jurisdiction by this court over that because they waived that. You don't have to object again if the issue had already been ruled upon. You're saying that it did come up prior to the trial which law is going to apply, right? It came up very early on in the case. That's what I mean. So are you essentially saying that that was a conditional ruling at that point? At that point, the judge, I believe his words were it was a prima facie evidence that was presented to come up with the court's decision that Michigan law would apply, but then the court indicated that the court would listen to the testimony, would look at the facts of the case, and then during the trial made a decision after hearing all the evidence. So, yes, it was conditional on the evidence that came in during the trial. Yes, until the end of the trial, there was no indication that. I'll go back and look at that. Thank you. Yes. So, ultimately, the appellant never objected to the judge's instructions that were presented to the parties that this is the law, these are the charges that will be given to the jury, and no objection was made. Because no objection was made, the issue was not preserved for appeal. So it's not properly before this court. Ultimately, as the court has noted, the judge made the decision to apply Michigan law after hearing all the testimony, after hearing all the facts, after coming up with all the information that shows that Michigan had a material greater interest in this matter than did Louisiana. Was the issue of what law should apply essentially re-argued in the conference settling on the jury instructions? It was never brought up by the appellant, Your Honor. I assume that they submitted a proposed instruction that would have instructed the jury that Louisiana law applied, right? They did submit an initial set of instructions that did have a Louisiana law-based instruction, correct. When you say an initial set, are you talking about at the time of the trial or sometime earlier? Just prior to the trial, both sides submitted jury instructions. Okay. So at that point, they're conflicting instructions on choice of law. Now, there was a conference to settle the disputes about the instructions, right? There was a conference, but that issue wasn't discussed at the conference. So at the conference to settle the dispute between conflicting instructions, how did he seize upon one law versus the other if it wasn't even discussed? The judge had presented a set of instructions that the court felt were appropriate to give at the conclusion of the trial. Okay. So both sides submit their own. The judge then condenses them into one and resolves the disputes in his mind and then gives them back to you, right? Correct. Now, at that point, did Ridgway object to the instruction as to Michigan law? No. No objection. Is there any more general noting in the record without regard to specifically discussing the choice of law point? Was there any discussion of Mr. Ridgway's preserving his continuing to rely on the instructions he submitted as opposed to those you submitted or those the judge came up with? No. The appellant did nothing about the issue. As I recall, the instructions were given to us, I believe, on the Friday when the trial was concluding, possibly on Thursday. And then there was a conference, I believe, late Friday, as I recall. Then closings are scheduled for the beginning of the following week. And I know in the instance of the appellee that we had certain objections that we preserved by filing objections to the court's set of instructions. But the appellant didn't orally or in writing raise any objection to the court's instructions that the court intended to give. And the reason we had the instructions ahead of time was so that we could look at these instructions and make objections if we felt anything was appropriate. But the appellant did nothing, either orally or in writing. Consequently, this entire issue is not something that is even appealable at this juncture because they did nothing. He says in his reply brief that he argued for application of Louisiana law in the motion for partial summary judgment, in the motion to dismiss for lack of personal jurisdiction, and again in his trial brief. Is that not accurate or it doesn't matter? Those things were done. But as the law requires, if you look at the Ortiz decision by the Supreme Court, which was followed, actually, before this Court in the Hill decision. But you're saying it doesn't matter because that's not enough, not that he didn't do it. He didn't do it. Wait a minute. He says he did these three things. He did do those. You admit that he did those three things. Yes, yes. You aren't saying he did what he needed to do. I'm saying he did these things that Judge Roger points out. What I'm saying is, is that he didn't do enough because when he actually got the court. Because those aren't enough. Exactly, because when the court had, when the court came up with the set of instructions that the court intended to use, they never objected. We're now being diverted into something. And the diversion is into whether what he did was enough. He thinks it is. You think it isn't. And what do we look to then to determine whether the specific context within which he contended that Louisiana applies in these earlier proceedings is sufficient to preserve it so that you don't have to renew your objection on that particular point. What do you say we look at? I make two points. And I see my time's up. May I briefly conclude and answer your question? Go ahead and answer it. First, what you look at is what was done when the set of jury instructions were given by the court to both parties and were objections made to those instructions to preserve the issue. Second, though, most importantly, it's quite frankly irrelevant because even if it was properly preserved and even if it was properly brought before this court, it makes no difference because the parties contracted for the proper choice of law, 1871 dictates that should be followed, and Louisiana does not have a material greater interest in having its law applied over the law of Michigan, which the court applied. My question to you very succinctly is what do we look to to determine if it was waived by virtue of not having raised it again at the charging conference? Is there a case you want us to look at for that? Well, sure. To a case, there's the Hill decision by this court and then the Ortiz case. Okay. Hill and Ortiz. I got it. And then look at the record. There's no objections made. That's what I need. Thank you. Is Ortiz the case that I was on the panel for in this court and we got it wrong? I was thinking it was about prison. Well, I think. This panel's never been wrong. I don't think it relates to how one preserves an objection to jury instructions. I think if it's the same case, it relates to the issue of whether it's, it relates to the issue of the record on the summary judgment motion versus the record at trial and making motions at trial, you know, for directed verdict or, you know, and what one relies on at what point in time. Am I thinking of the wrong case? Ortiz did deal with summary judgment and whether you need to make a Rule 50 objection. Yes, thank you. Correct. Scott, it doesn't deal with the sufficiency of earlier objections to also or submission of jury instructions to constitute an objection to the jury instructions. Of course, I'm not sure that this really comes to us as a question of the objection to the jury instructions now that I'm looking back at the appellant's brief. Honestly, that issue doesn't matter because, as I said, unless there's a material greater interest and a fundamental policy and the court made that decision with all the evidence in front of it. It matters a lot if you're wrong on materially. No, on materiality, but I'm saying the issue of preservation, I don't believe it's properly before this panel, but even if it is, the test then is you look at 187.1, it was contracted for and the choice of law was made, and then even if you get to 187.2, the choice of law is still proper because there isn't a fundamental policy such as non-competes are never enforced, as Judge Rogers pointed out, they're enforced sometimes. You're saying we don't need to get into whether it was waived because you went on the issue anyway. Exactly. Thank you. Okay. Thank you. All right. We'll hear from you, Mr. LeCour. Just a few points to make. First off, Judge McKeague, I hope you didn't think I was being evasive in your questioning earlier. I was trying to answer it as best I could. Let me offer this to your Honor when we talk about the materially greater interest question. You want me to summarize the question again? It might be helpful. All right. Your argument is that this is a fundamental policy of the State of Louisiana in connection with non-compete clauses, so therefore, the interest of Louisiana is materially greater than Michigan. That's what I synthesize your argument to mean. Do I have it right? That's pretty close, Your Honor. Okay. Now, pretty close is good enough. Yeah. So do you have a case that says that? Specifically, no. I don't think that I have a case that says that alone gets you over the hump. Okay. That is all that I was trying to find out. But let me add to the materially greater interest equation. The restatement, and this really ties into 188, which talks about absent of choice of law would another state have an interest in the case. Section 196 of the restatement talks about contracts for rendition of services, and it says very plainly, setting aside a choice of law question or choice of law issue, the place of performance of a contract is almost always going to be the appropriate form to litigate that particular question. But isn't that juxtaposed by the comments to 187 that says the agreement of the parties is almost always going to control? Well, I mean, it's just a different way of looking at it. I understand. You're citing a section that doesn't apply because there is an agreement of the parties. I suppose the difficulty is, at least that I'm having, is the question of materially greater interest, to my mind, is weighing in balance, and one state has more than the other. It doesn't have to be overwhelming. It doesn't have to be completely lopsided. One has to have the greater interest in the dispute. And I say- I wouldn't say materially greater means 51-49. Unfortunately, I don't have a case that quantifies it. But my point is only that when you add up all the different pieces in this puzzle, and that is the statute, which we've talked about, and we talk about the section 196, which says the place of performance is paramount, and we look at all of the things that happened in Louisiana. He lives there. He had his customers there. He visited hospitals there, visited surgeons there, received the product there. He made a sales call there, had his team there. And when we look at Michigan, I mean, the connection to Michigan really is, well, that is where they are for sure. And we look at, well, what is Michigan- But the case law has said that, I mean, that is always going to be the case, and that isn't sufficient. In fact, in a jurisdictional analysis, that's not sufficient to confer jurisdiction. I mean, that's what this court has said in its earlier decisions. Something more, some purposeful availment is required. And so, you know, I don't contend that this is a black-and-white choice, Your Honor. Obviously it's not. But when you weigh the competing interests in the balance, to my view, it's overwhelmingly in Louisiana's favor. I am out of time. I thank you for your attention. We thank you both for your arguments, and we'll consider the case carefully. It's an interesting case, and we don't often get the opportunity to revisit things like this, you know, with some complexity that we learned a long time ago in law school. So it's been very interesting to prepare for the case. I didn't even get a chance to talk about Wong, because I know the two of you are on that panel, and that has some interesting questions as well. But I'm done. Another day, or for our consideration afterwards. All right. Thank you.